# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Thomas Griffin, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Case No. 22-cv- ) |
| Village of Calumet Park Police Department, Ronald Denson in his individual capacity, Christopher Fletcher in his individual capacity, and the Village of Calumet Park, as indemnitor, | ) Hon. ) ) ) **JURY DEMANDED** ) ) |
|     Defendants. | ) |

## COMPLAINT

THOMAS GRIFFIN ("Plaintiff" or "Griffin"), by and through his undersigned counsel, GIANNA R. SCATCHELL, ESQ., DISPARTI LAW GROUP, P.A., complains as follows against Defendants VILLAGE OF CALUMET PARK POLICE DEPARTMENT, FLETCHER in his individual capacity, and THE VILLAGE OF CALUMET PARK, as indemnitor, (collectively, hereinafter, "Defendants").

## NATURE OF ACTION

1. Plaintiff Griffin seeks redress for actions taken against him by the Defendants related to the exercise of his rights under the First Amendment (Speech), his constitutional rights.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under federal law, specifically, the First Amendment of the United States Constitution, count pursuant to 28 U.S.C. § 1367 because the state law count is so related to the other claims in this action to form part of the same case or controversy, 42 U.S.C. §§ 1981, 1983, and attorneys' fees under 42 U.S.C. § 1988.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). On information and belief, all Defendants reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## PARTIES

4. Plaintiff Thomas Griffin ("Plaintiff" or "Griffin") is a legal adult resident of Will County. He was employed as a full-time Calumet Park police officer from 2008 until his involuntary retirement on or about August 24, 2021, as part of the events underlying this Complaint.

5. Defendant Calumet Park ("Village" or "CP") is a municipality incorporated in the State of Illinois and the employer of the defendants. The Village has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. It is responsible for the challenged actions of the individual defendant and the Village.

6. Defendant Ronald Denson ("Denson") is the elected mayor of Calumet Park and has been its mayor at all times relevant and acted as an agent of the Village of Calumet Park. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

7. Defendant, Christopher Fletcher ("Fletcher") is the appointed police chief of the Calumet Park Police Department and acted as an agent of the Village of Calumet Park. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

I. <u>Background</u>

8. Plaintiff has been a police officer for nearly 30 years and served on various departments before coming to Calumet Park in 2008.

9. While Griffin was a police officer at CP, the Administration repeatedly retaliated against him because he was outspoken about issues plaguing the department including public corruption, sexual harassment, and official misconduct.

10. During his time that he was a police officer with Calumet Park, the administration unsuccessfully attempted to bring him up on charges on at least 10 occasions.

11. Griffin responded by filing grievances with the Fraternal Order of Police.

12. Prior to his termination, Griffin was off work per the advice of his treating physician, which led to a dispute regarding the Department's obligation to compensate him for the period of time that he was off.

13. On or about August 2011, the Department fired Griffin for an "alleged violation of Department rules and policies" even though he was on a leave of absence as directed by his treating physician.

14. Griffin's FOP lodge filed a grievance on his behalf challenging the compensation issue and subsequently the termination of the Grievant pursuant to the parties' grievance procedure.

15. The Union and Village agreed to consolidate the leave pay and termination matters and hold one arbitration hearing in front of the same Arbitrator, James Cox.

16. On July 19, 2012, the Department and the Union arbitrated the matter before Arbitrator Cox.

17. On September 25, 2012, Arbitrator Cox issued his Opinion and Award in favor of the Union on both issues.

18. Cox's Award called for the Department to compensate Griffin for the one-month period, July 8, 2011, to August 4, 2011 (less the date of August 3, 2011) over the compensation dispute of his leave.

19. Cox's Award also called for the Department to offer Griffin reinstatement with "full back pay and benefits from the date of his discharge less any outside earnings."

20. However, in late November 2012, the Department had still failed to reinstate Griffin or any of his benefits including his insurance and benefits and it instead ordered Griffin to report to its physician for a return to duty examination citing unspecified "concerns."

21. Ultimately, the FOP filed an application to Confirm the Arbitrator's Opinion and Award in the chancery division of Cook County.

22. The Judge in the chancery case confirmed the Arbitrator's Opinion and Award and determined that the Department had not provided any reason for their failure to reinstate Griffin.

23. The Village was compelled to pay Griffin over $100,000 for back pay and the Village was ordered to reinstate Griffin including all benefits that he would have received during that time, including pension contributions.

24. The Department's retaliation did not stop there. Griffin was involved in an accident on-duty where his squad car was "t-boned" on or about 2015 where he sustained injuries.

25. While Griffin was recovering, the Department relentlessly thwarted his recovery in various ways including making him use his banked compensatory time ($\approx$733 hours) instead of allowing him to receive pay through a temporary disability pension or PEDA (Public Employee Disability Act).

26. As of the date of filing, the Department still refuses to pay him for the 733 hours despite Griffin making numerous requests for payment.

27. On or about December 2019, several police officers (including Griffin) and their union signed a vote of no confidence against the then-police chief, Kenneth Mann, calling into question Mann's "integrity, character, knowledge, and lack of leadership skills."

28. The letter to Denson further outlined specific concerns with the Department's training and resources alleging that its "[o]fficers are forced to work more hours than required by law," the Department's patrol vehicles are in disrepair, the Department radios are broken, and the bulletproof vests have been expired.

## Defendants History of Third-Party Retaliation

29. As a matter of widespread practice so prevalent as to comprise municipal policy, those who have dared to oppose the Denson Administration have experienced retaliation in a manner like that alleged by Plaintiff.

30. On belief and on or about May 2021, Griffin received a phone call from the Village Attorney requesting information about Assistant Chief, Kurtisa Curtis regarding her alleged inappropriate sexual harassment and a lawsuit filed by Cory Wright.

31. On further belief, the attorney said that she received his phone number from Mayor Ronald Denson.

32. Griffin responded to the attorney that he refused to go to the Village's attorney's office to discuss what he reasonably perceived to be a "criminal matter" and said that the Curtis matter should be referred to an outside agency and it is a conflict of interest for him to be questioned by the Village attorneys regarding a criminal matter involving his supervisor, Curtis.

33. On or about July 2021, Don Shefcik, the then assistant chief of police told Griffin that the Department was trying to get rid of him by enacting a mandatory retirement ordinance.

34. That was the only time that Griffin was informed about this purported ordinance before he was involuntarily retired.

35. On or about July 8, 2021, the Village allegedly enacted an ordinance changing the mandatory date of retirement for police officers and fire fighters from 65 years old to 63 years old.

36. Griffin would be turning 63 years old on August 20, 2021.

37. On belief, Defendants never published the mandatory retirement ordinance or put any of its officers, including Griffin on notice.

38. On further belief, Defendants never informed the FOP lodge of its unilateral change to police officer's rights despite years of ongoing discussions to approve a new collective bargaining agreement.

39. Griffin worked his normal shift on August 23-24, 2021, which was after his 63rd birthday.

40. During his shift, Griffin answered ≈13 calls and was never directed to go home or even informed that he was involuntarily "retired."

41. On belief, on or about August 24, 2021, Defendants had an unknown person drop off an envelope without any address marking or postage containing a letter informing him of his "retirement" as depicted below:



**42.** Griffin was blind-sided with his involuntary retirement and left reeling with little recourse on how to challenge Defendant Fletcher's directive, which was on belief, ordered by Denson.

**43.** Defendant, Calumet Park, is a home rule municipality in Illinois that pays pensions to certain employees and their beneficiaries.

**44.** The Calumet Park pension plan is severely underfunded.

**45.** The pension board is administered by a board of trustees and a staff and is governed by the Illinois Pension Code.

**46.** On or about December 2021, Griffin filled out an application for his pension benefits and handed the application to Village Clerk, Teri Raney, at a pension board meeting.

47. For approximately two months, from January 2022 to February 2022, Defendant Village refused to provide responses to the Freedom of Information Requests that Griffin's attorney was seeking, which was simply a copy of its purported mandatory retirement ordinance.

48. The Village's FOIA Officer, Teri Raney, repeatedly refused this request and even stated that she had to "redact portions" of the ordinance before responding to the already tardy FOIA's despite ordinances being a matter of public record.

49. On belief, Defendants never informed Griffin that his application for pension benefits was denied for perceived insufficient service credits.

50. If Griffin does not have enough pension credits, Griffin is only entitled to his pension contributions, he will not be vested in the Department's pension, nor would the Village have to match his contributions.

51. Defendants never informed Griffin of how he could apply for pension benefits, how to apply for retiree health insurance, or whether he had insurance under COBRA.

52. Defendant Village offers retired police officers health insurance for both the retired officer and his or her spouse.

53. Defendant Village paid Griffin's health insurance coverage throughout August 20, 2021, until July 30, 2022.

54. Throughout 2022, Griffin experienced several serious and expensive medical issues.

55. On belief, Defendants were aware of Griffin's extensive medical issues and therefore sought to terminate his health insurance as further retaliation against Griffin's protected activities.

56. On further belief, Defendant Village never informed Griffin that it was terminating his health insurance coverage.

57. Griffin discovered that he no longer had health insurance when he went to one of his doctor's appointments and was told that he no longer had insurance coverage.

58. On belief, Defendant Village provides retiree health insurance to other retired police officers.

**Disparate Treatment: The Department Officers' Tolerated Misdeeds**

59. Department's culture reveals a troubling pattern of misconduct among similarly situated Department officers who have not faced extensive investigations or disciplinary actions for conduct that clearly violates the Department's policies and practices, which perpetuates a code of silence.

60. This Code of Silence is an implicit understanding between and among members of the Department resulting in a refusal or failure to report instances of misconduct of which they are aware despite their obligation to do so as sworn peace officers to protect themselves or their fellow officers from discipline, criminal prosecution, or civil liability.

61. This failure to discipline engendered the firm understanding among Department Officers, that they are above the law and can act with impunity without the fear of consequences.

62. The Village's policymakers are aware, condone, or facilitate the enforcement of this "code of silence," which is neither manifestly job-related nor consistent with business necessity.

63. In the rare instances when complaints of misconduct are sustained, discipline is haphazard and unpredictable and is meted out based on rank and internal connections, which does little to deter misconduct (e.g. Kurtisa Curtis is again at the Department despite lawsuits alleging sexual harassment being filed against her and on belief was never brought up on charges before the Village's Board of Police and Fire Commission.

**COUNT I – 42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT RIGHTS OF SPEECH AND ASSOCIATION**
**Plaintiff v. All Individual Defendants**

64. The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

65. The First Amendment to the United States Constitution guarantees the Plaintiff's rights to speak on matters of public concern free from retaliation.

66. As described more fully above and incorporated by reference herein, Plaintiff engaged in extensive protected speech on matters of public concern, including, but not limited to publicly opposing public corruption, filing numerous grievances challenging the Department's unlawful conduct, and opposing other Village misconduct and misdeeds.,

67. Griffin had no job purpose for his speech and associational activity, no self-interest for his speech activity, and his speech activity occurred through acts outside of the line of duty, including as a private citizen in making complaints with the FBI and Cook County State's Attorney's Office, filing grievances through CP's FOP Lodge, and taking his grievances to arbitration or even court action.

68. The foregoing activities had nothing to do with Griffin's official job duties as a police officer for the Village of Calumet Park.

69. Griffin was retaliated against, harassed, transferred, constructively demoted, and constructively terminated for engaging in constitutionally protected speech and expressive conduct, including by at least the following actions:

   a. Not being compensated for working after his birthday on August 20, 2021;

   b. Not being paid for his compensatory time that was erroneously used when he was injured in the line of duty;

   c. Drafting an ordinance one month before Griffin's 63rd birthday to get rid of Griffin once and for all despite numerous unsuccessful attempts;

d. Signing a Vote of No Confidence against the then-police chief, Mann;

   e. Being involuntarily retired in 2021;

   f. Not being provided any follow-up paperwork on how to apply for his pension benefits, insurance coverage, etc.

   g. Discontinuing his insurance coverage on July 31, 2022, despite the Village paying it since his was separated;

   h. Not providing any notice of Griffin's rights pursuant to COBRA once his insurance benefits were discontinued;

   i. Unofficially denying his application for pension payments based on "insufficient" service credits.

70. Griffin carried out his job duties competently and professionally, but Defendants penalized him for exercising his First Amendment protected rights, which caused the Defendants to retaliate against Griffin in the manner described in the preceding paragraphs.

71. As a result of the aforementioned deprivations, Plaintiff has suffered damages, including loss of pay that he would have received as a police officer until the age of 65, pension differential, emotional distress, reputational damage, and general compensatory damages.

WHEREFORE, for the foregoing reasons, Plaintiff, Thomas Griffin, requests that this Court enter judgment in his favor and against the individual Defendants in an amount to be proved at trial, including for pension benefits, health insurance, lost pay and benefits, general compensatory damages, emotional distress and reputational harm, for attorneys' fees under 42 U.S.C. § 1988, as well as order Calumet Park, Illinois to reinstate Thomas Griffin to his position and benefits with full make-whole relief, and for all such other relief to which he is entitled, and the Court deems just and proper.

## COUNT II – 42 U.S.C. § 1983 CLAIM OF RETALIATION FOR DEPRIVATION OF RIGHTS UNDER § 1981
**Plaintiff v. All Individual Defendants**

72. The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

73. 42 U.S.C. § 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." *See Campbell v. Forest Preserve Dist. of Cook County, Ill.*, 752 F.3d 665, 667 (7th Cir. 2014) (holding that public sector entities may be liable for 42 U.S.C. § 1981 violations via 42 U.S.C. § 1983).

74. The United States Supreme Court has held that retaliation claims are cognizable under Section 42 U.S.C. § 1981, including claims by individuals who suffer retaliation for having tried to help another. *See CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951, 1958 (2008).

75. Griffin engaged in conduct protected by 42 U.S.C. § 1981 position opposing public corruption and official misconduct as alleged above.

76. At all times, Defendants knew that Griffin opposed the aforementioned misconduct and were all aware of the grievances that were filed on his behalf, the arbitration proceedings, court proceedings, and reports to the FBI and State's Attorney's Office.

77. At all times, Plaintiff was performing his position in a satisfactory manner.

78. No similarly situated employee who did not oppose the Village's illegal activities was targeted like Griffin.

79. As a proximate result of Griffin's oppositional and protected conduct, Defendants personally and directly retaliated against Griffin in the foregoing manner and in violation of 42 U.S.C. § 1981.

80. Plaintiff has endured substantial financial loss, suffering, humiliation, emotional distress, and other damages in the past and the future.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for pension benefits, health insurance, lost pay and benefits, general and special compensatory damages, for emotional distress and reputational harm, for attorneys' fees under at least 42 U.S.C. § 1988, as well as order Calumet Park to reinstate Thomas Griffin to his position with full back pay and benefits and make-whole relief, and for all such other relief to which he is entitled, as the Court deems just and proper.

**COUNT III- MONELL CLAIM FOR DEPRIVATION OF PLAINITFF'S FIRST AMENDMENT RIGHTS**
**Plaintiff v. Defendant Calumet Park, Illinois**

81. The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

82. Defendant Fletcher, as the police chief of the Village of Calumet Park, Illinois is a final policymaker.

83. The Defendant Fletcher, by express actions, took action against Griffin for his protected First Amendment conduct in opposition to the administration throughout the last several years.

84. When Griffin refused to back down, he was retaliated against as described herein.

85. That the retaliation against Plaintiff was part of systemic express acts espoused by the Village, through its final policymakers, to punish officer Griffin for exercising his First Amendment rights and taking positions "adverse to the Village" as described throughout this Complaint.

86. That as a result of employing the foregoing express acts espoused by Calumet Park through Denson, a final policymaker, to retaliate against Plaintiff, Plaintiff suffered harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

87. WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, general compensatory, special, consequential damages, for emotional distress and reputational harm, for attorneys' fees under 42 U.S.C. § 1988, as well as order Calumet Park, Illinois to reinstate Plaintiff to his position and benefits with full make-whole relief, and for all such other relief to which he is entitled and the Court deems just and proper.

**COUNT IV –42 U.S.C. § 1983 CONSPIRACY TO DEPRIVE OF FIRST AMENDMENT RIGHTS**
**Plaintiff v. All Individual Defendants**

88. The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

89. On information and belief, defendants Denson and Fletcher, reached a mutual understanding to commit acts in retaliation against Griffin for his perceived opposition as described herein.

90. In furtherance of that agreement, Defendants and other unknown parties conspired to retaliate against Griffin, attempt to avoid paying him his lifetime pension benefits by not miscalculating his service credits and then arbitrarily denying him his pension, and contrive a way to remove Griffin without giving him the opportunity to take the matter to arbitration or Court (e.g. the mandatory retirement ordinance enacted one month before he turned 63 years old).

91. In furtherance of that agreement, Defendants conspired to retaliate and embarrass Plaintiff Griffin and ultimately secure his separation from the Department.

92. The object of the conspiracy was to retaliate against Griffin for the oppositional and protected conduct by committing numerous adverse actions against Griffin.

93. Griffin was deprived of his First Amendment constitutional rights in the manner described in the preceding paragraphs, including the right to speak and associate freely on matters of public concern, such as opposition to public corruption or disruption of perceived efforts to eliminate public corruption within the Department and the Village of Calumet Park.

94. That in furtherance of the conspiracy, Defendants committed overt acts in retaliation against Plaintiff for his protected and oppositional conduct as described above.

95. That the misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

96. As a result of the aforementioned deprivation of federal rights, Plaintiff has suffered injuries including, but not limited to, deprivation of pension benefits, health insurance, lost pay and benefits, reputation damage, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for pension benefits, health insurance, lost pay and benefits, general compensatory, special, consequential damages, emotional distress and reputational harm, for attorneys' fees under 42 U.S.C. § 1988, as well as order Calumet Park, Illinois to reinstate Plaintiff to his position with full back pay and benefits and with full makewhole relief, and for all such other relief to which he is entitled and the Court deems just and proper.

**COUNT VI – INDEMNIFICATION AGAINST VILLAGE OF CALUMET PARK, ILLINOIS**
**Plaintiff v. Defendant Village of Calumet Park, Illinois**

97. The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

98. As a municipality, the Village of Calumet Park, Illinois has indemnification obligations for wrongful acts committed by its officials, employees, and agents, including, here, the individual Defendants. See 745 ILCS §§ 10/1-202 and 9-102.

99. The Village is responsible for the challenged actions of the individual Defendants and the Village because of such indemnification obligations.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in his favor and against Defendants and order Defendant Village of Calumet Park, Illinois to pay judgments entered and to indemnify the individual Defendants for judgments entered against them, and for such other relief as this Court deems proper.

## JURY TRIAL DEMAND

100. Plaintiff hereby requests a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, JOHN SCATCHELL, SR., prays that this Honorable Court:

A. Conduct a mediated settlement conference or to refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

B. Enter judgment in the Plaintiff's favor and against Defendants;

C. Order affirmative relief necessary to eradicate the effects of the Defendants' unlawful employment practices;

D. Award the Plaintiff actual damages suffered to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

E. Award the Plaintiff compensatory damages to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct; Award Plaintiff punitive and/or exemplary damages to the extent permissible by law against the individual defendants only;

F. Award Griffin $110 a day for the aforementioned COBRA violations (29 U.S.C. § 1132(c));

G. Award the Plaintiff prejudgment interest on these damages; and,

H. Grant such further relief as the Court deems necessary and proper under the circumstances.

Respectfully submitted,

By: Thomas Griffin

Gianna Scatchell, Plaintiff's Attorneys

Dated: August 24, 2022

Gianna Scatchell, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: gia@dispartilaw.com