**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| THOMAS GRIFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:22-cv-04515 |
| VILLAGE OF CALUMET PARK POLICE | ) |
| DEPARTMENT, RONALD DENSON in his | ) |
| individual capacity, CHRISTOPHER | ) |
| FLETCHER in his individual capacity, and | ) |
| THE VILLAGE OF CALUMET PARK, as | ) |
| indemnitor, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' ANSWER TO COMPLAINT and AFFIRMATIVE DEFENSES

Defendants, Village of Calumet Park, Ronald Denson, and Christopher Fletcher, by and through their attorneys, Odelson, Sterk, Murphey, Frazier & McGrath, Ltd., answer plaintiff's complaint as follows:

## NATURE OF ACTION

1.     Plaintiff Griffin seeks redress for actions taken against him by the Defendants related to the exercise of his rights under the First Amended (Speech), his constitutional rights.

**ANSWER:** Defendants admit that plaintiff has filed this action seeking certain remedies on the claimed basis.

2.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under federal law, specifically, the First Amendment of the United States Constitution, count pursuant to 28 U.S.C. § 1369 because the state law count is so related to the other claims in this action to form part of the same case or controversy, 42 U.S.C. §§ 1981, 1983, and attorneys' fees under 42 U.S.C. § 1988.

**ANSWER:** Defendants admit this Court has jurisdiction on this claimed basis.

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C § 1391(b). On information and belief, all Defendants reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

**ANSWER:** Defendants admit venue is appropriate here.

<u>**PARTIES**</u>

4.      Plaintiff Thomas Griffin ("Plaintiff" or "Griffin") is a legal adult resident of Will County. He was employed as a full-time Calumet Park police officer from 2008 until his involuntary retirement on or about August 24, 2021, as part of the events underlying this Complaint.

**ANSWER:** Admit plaintiff's residency and employment with the Village police department from 2008 to or about August 24, 2021, upon retirement. Defendants deny all remaining allegations in paragraph 4.

5.      Defendant Calumet Park ("Village" or "CP") is a municipality incorporated in the State of Illinois and the employer of the defendants. The Village has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. It is responsible for the challenged actions of the individual defendant and the Village.

**ANSWER:** Defendants admit that the Village is an Illinois municipality, that defendant Denson was at some times relevant hereto, including at the present, the elected Village President and that defendant Fletcher was at some times relevant hereto, including at the present, the appointed Village Police Chief. Defendants admit the existence of 745 ILCS §§ 10/1-202 and 9-102 and that the statutes provide for certain indemnification obligations for the Village with respect

2

to employees and officials, including the individual defendants, under certain circumstances as declared therein. Defendants deny all remaining allegations in paragraph 5.

6.      Defendant Ronald Denson ("Denson") is the elected mayor of Calumet Park and has been its mayor at all times relevant and acted as an agent of the Village of Calumet Park. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

**ANSWER:**  Admit, including that plaintiff is alleging that defendant Denson acted under "color of law" and that plaintiff is purportedly suing defendant Denson in his individual capacity.

7.      Defendant Christopher Fletcher ("Fletcher") is the appointed police chief of the Calumet Park Police Department and acted as an agent of the Village of Calumet Park. He engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

**ANSWER:**  Admit, including that plaintiff is alleging that defendant Fletcher acted under "color of law" and that plaintiff is purportedly suing defendant Fletcher in his individual capacity.

## FACTUAL ALLEGATIONS

I.      Background

8.      Plaintiff has been a police officer for nearly 30 years and served on various departments before coming to Calumet Park in 2008.

**ANSWER:**  Admit.

9.      While Griffin was a police officer at CP, the Administration repeatedly retaliated against him because he was outspoken about issued plaguing the department including public corruption, sexual harassment, and official misconduct.

**ANSWER:**  Deny.

3

10. During his time that he was a police officer with Calumet Park, the administration unsuccessfully attempted to bring him up on charges on at least 10 occasions.

**ANSWER:** Admit that plaintiff was disciplined and/or charged with policy and general order violations while employed with the Village on occasions. Defendants deny all remaining allegations in paragraph 10.

11. Griffin responded by filing grievances with the Fraternal Order of Police.

**ANSWER:** Admit that plaintiff filed grievances through his union on occasion. Defendants deny all remaining allegations in paragraph 11.

12. Prior to his termination, Griffin was off work per the advice of his treating physician, which led to a dispute regarding the Department's obligation to compensate him for the period of time that he was off.

**ANSWER:** Admit that plaintiff's employment was terminated by the Village. Defendants admit that plaintiff for a certain time was on leave of absence from his duties with the Village. Defendants admit plaintiff filed a grievance regarding his entitlement to compensation for a certain number of days immediately preceding his formal reinstatement to duty in August 2011. Defendants deny all remaining allegations in paragraph 12.

13. On or about August 2011, the Department fired Griffin for an "alleged violation of Department rules and policies" even though he was on a leave of absence as directed by his treating physician.

**ANSWER:** Admit that, effective August 31, 2011, the Village terminated plaintiff for violation of police department rules and policies. Defendants admit that earlier in the year, plaintiff had been on a leave of absence on direction of a treating physician. Defendants deny all remaining allegations in paragraph 13.

14. Griffin's FOP lodge filed a grievance on his behalf challenging the compensation issue and subsequently the termination of the Grievant pursuant to the parties' grievance procedure.

**ANSWER:** Admit that plaintiff filed grievances challenging his termination and seeking compensation for a certain number of days immediately preceding his formal reinstatement from leave.

15. The Union and Village agreed to consolidate the leave pay and termination matters and hold one arbitration hearing in front of the same Arbitrator, James Cox.

**ANSWER:** Admit that the parties by agreement proceeded to arbitration on both grievances before Arbitrator James Cox.

16. On July 19, 2012, the Department and the Union arbitrated the matter before Arbitrator Cox.

**ANSWER:** Admit.

17. On September 25, 2012, Arbitrator Cox issued his Opinion and Award in favor of the Union on both issues.

**ANSWER:** Admit.

18. Cox's Award called for the Department to offer Griffin for the one-month period, July 8, 2011, to August 4, 2011 (less the date of August 3, 2011) over the compensation dispute of his leave.

**ANSWER:** Admit that plaintiff was awarded compensation and benefits for this time period based on a delay in his formal reinstatement to duty.

19. Cox's Award also called for the Department to offer Griffin reinstatement with "full back pay and benefits from the date of his discharge less any outside earnings."

5

**ANSWER:** Admit.

20.     However, in late November 2012, the Department had still failed to reinstate Griffin or any of his benefits including his insurance and benefits and it instead ordered Griffin to report to its physician for a return to duty examination citing unspecified "concerns."

**ANSWER:** Admit that plaintiff had not yet been reinstated by that time and was required to report for an examination by a Village-selected medical provider as part of the Village's employment reinstatement process. Defendants deny all remaining allegations in paragraph 20.

21.     Ultimately, the FOP filed an application to Confirm the Arbitrator's Opinion and Award in the chancery division of Cook County.

**ANSWER:** Admit.

22.     The Judge in the chancery case confirmed the Arbitrator's Opinion and Award and determined that the Department had not provided any reason for their failure to reinstate Griffin.

**ANSWER:** Admit that the court granted plaintiff's union's application to confirm the arbitrator's award and granted other relief. Defendants deny all remaining allegations in paragraph 22.

23.     The Village was compelled to pay Griffin over $100,000 for back pay and the Village was ordered to reinstate Griffin including all benefits that he would have received during that time, including pension contributions.

**ANSWER:** Admit that the court ordered the Village to pay plaintiff back pay and to reinstate his employment with benefits through September 4, 2013. Defendants deny all remaining allegations in paragraph 23.

24.     The Department's retaliation did not stop there. Griffin was involved in an accident on-duty where his squad was "t-boned" on or about 2015 where he sustained injuries.

**ANSWER:** Admit that plaintiff was involved in an automobile accident in 2015 from which he claimed injuries. Defendants deny all remaining allegations in paragraph 24.

25.     While Griffin was recovering, the Department relentlessly thwarted his recovery in various ways including making his use his banked compensatory time ($^{\sim}$733 hours) instead of allowing him to receive pay through a temporary disability pension or PEDA (Public Employee Disability Act).

**ANSWER:** Deny.

26.     As of the date of filing, the Department still refuses to pay him for the 733 hours despite Griffin making numerous requests for payment.

**ANSWER:** Deny.

27.     On or about December 2019, several police officers (including Griffin) and their union signed a vote of no confidence against the then-police chief, Kenneth Mann, calling into question Mann's "integrity, character, knowledge, and lack of leadership skills."

**ANSWER:** Admit that plaintiff and officers signed such a document. Defendants deny all remaining allegations in paragraph 27.

28.     The letter to Denson further outlines specific concerns with the Department's training and resources alleging that its "[o]fficers are forced to work more hours than required by law," the Department's patrol vehicles are in disrepair, the Department radios are broken, and the bulletproof vests have been expired."

**ANSWER:** Admit the referenced letter made these statements. Defendants deny all remaining allegations in paragraph 28.

**Defendants History of Third-Party Retaliations**

29.     As a matter of widespread practice so prevalent as to compromise municipal policy,

those who have dared to oppose the Denson Administration have experiences retaliation in a manner like that alleged by Plaintiff.

**ANSWER:** Deny.

30.     On belief and on or about May 2021, Griffin received a phone call from the Village attorney requesting information about Assistant Chief, Kurtisa Curtis regarding her alleged inappropriate sexual harassment and a lawsuit filed by Cory Wright.

**ANSWER:** Admit that certain officers at some point were contacted by a Village attorney related to the investigation into a complaint against then-Assistant Chief Curtis. Defendants deny all remaining allegations in paragraph 30.

31.     On further belief, the attorney said that she received his phone number from Mayor Ronald Denson.

**ANSWER:** Deny.

32.     Griffin responded to the attorney that he refused to go to the Village's attorney's office to discuss what he reasonably perceived to be a "criminal matter" and said that the Curtis matter should be referred to an outside agency and it is a conflict of interest for him to be questioned by the Village attorneys regarding a criminal matter involving his Supervisor, Curtis.

**ANSWER:** Defendants are without sufficient information to determine the veracity of these allegations and therefore deny the allegations in paragraph 32.

33.     On or about July 2021, Don Shefcik, the then assistant chief of police told Griffin that the Department was trying to get rid of him by enacting a mandatory retirement ordinance.

**ANSWER:** Deny.

34.     That was the only time that Griffin was informed about this purported ordinance before he was involuntarily retired.

**ANSWER:** Denied.

35.     On or about July 8, 2012, the Village allegedly enacted an ordinance changing the mandatory date of retirement for police officers and fire fighters from 65 years old to 63 years old.

**ANSWER:** Admit that the Village declared the retirement age for police officers and firefighters to be 63 years old. Defendants deny all remaining allegations in paragraph 35.

36.     Griffin would be turning 63 years old on August 20, 2021.

**ANSWER:** Admit.

37.     On belief, Defendants never published the mandatory retirement ordinance or put any of its officers, including Griffin on notice.

**ANSWER:** Deny.

38.     On further belief, the Defendants never informed the FOP lodge of its unilateral changes to police officer's rights despite years of ongoing discussions to approve a new collective bargaining agreement.

**ANSWER:** Deny.

39.     Griffin worked his normal shifts on August 23-24, 2021, which was after his 63rd birthday.

**ANSWER:** Admit that plaintiff arrived for his shift on August 23, 2021. Defendants deny all remaining allegations in paragraph 39.

40.     During his shift, Griffin answered $\approx$ 13 calls and was never directed to go home or even informed that he was involuntarily retired.

**ANSWER:** Denied.

41.     On belief, on or about August 2021, Defendants had an unknown person drop off an envelope without any address marking or postage containing a letter informing him of his

"retirement" as depicted below.

**ANSWER:** Admit that an officer was instructed to deliver a written communication to plaintiff related to his retirement following plaintiff's refusal to return multiple prior attempts to reach him.

42.    Griffin was blind-sided with his involuntary retirement and left reeling with little recourse on how to challenge Defendant Fletcher's directive, which was on belief, ordered by Denson.

**ANSWER:** Deny.

43.    Defendant, Calumet Park, is a home rule municipality in Illinois that pays pensions to certain employees and their beneficiaries.

**ANSWER:** Admit.

44.    The Calumet Park pension plan is severely underfunded.

**ANSWER:** Admit that the pension plan is not fully funded. Defendants deny all remaining allegations in paragraph 44.

45.    The pension board is administered by a board of trustees and a staff and is governed by the Illinois Pension Code.

**ANSWER:** Admit.

46.    On or about December 2021, Griffin filled out an application for his pension benefits and handed the application to Village Clerk, Teri Rainey, at a pension board meeting.

**ANSWER:** Deny.

47.    For approximately two months, from January 2022 to February 2022, Defendant Village refused to provide responses to the Freedom of Information Requests that Griffin's attorney was seeking, which was simply a copy of its purported mandatory retirement ordinance.

**ANSWER:** Deny.

48.     The Village's FOIA Officer, Teri Rainey, repeatedly refused this request and even stated that she had to "redact portions" of the ordinance before responding to the already tardy FOIA's despite ordinances being a matter of public record.

**ANSWER:** Deny.

49.     On belief, Defendants never informed Griffin that his application for pension benefits was denied for perceived insufficient service credits.

**ANSWER:** Deny.

50.     If Griffin does not have enough pension credits, Griffin is only entitled to his pension contributions, he will not be vested in the Department's pension, nor would the Village have to match his contributions.

**ANSWER:** Admit that officers without sufficient credits or service time to earn a pension are entitled to a return of their contributions. Defendants deny all remaining allegations in paragraph 50.

51.     Defendants never informed Griffin of how he could apply for pension benefits, how to apply for retiree health insurance, or whether he had insurance under COBRA.

**ANSWER:** Deny.

52.     Defendant Village officers retired police officers' health insurance for both the retired officer and his or her spouse.

**ANSWER:** Admit the Village offers health insurance for qualified retirees and their spouses.

53.     Defendant Village paid Griffin's health insurance coverage throughout August 20, 2021 until July 30, 2022.

**ANSWER:** Admit.

54. Throughout 2022, Griffin experienced several serious and expensive medical issues.

**ANSWER:** Defendants are without sufficient information to determine the veracity of these allegations and therefore deny the allegations in paragraph 54.

55. On belief, Defendants were aware of Griffin's extensive medical issues and therefore sought to terminate his health insurance as further retaliation against Griffin's protected activities.

**ANSWER:** Deny.

56. On further belief, Defendant Village never informed Griffin that it was terminating his health insurance coverage.

**ANSWER:** Deny.

57. Griffin discovered that he no longer had health insurance when he went to one of his doctor's appointments and was told that he no longer had insurance coverage.

**ANSWER:** Defendants are without sufficient information to determine the veracity of these allegations and therefore deny the allegations in paragraph 57.

58. On belief, Defendant Village provides retiree health insurance to other retired police officers.

**ANSWER:** Admit that the Village does provide health care coverage to qualified retired police officers.

**Disparate Treatment" The Department Officers' Tolerated Misdeeds**

59. Department's culture reveals a troubling pattern of misconduct among similarly situated Department officers who have not faced extensive investigations or disciplinary actions

for conduct that clearly violates the Department's policies and practices, which perpetuates a code of silence.

**ANSWER:** Deny.

60.     This Code of Silence is an implicit understanding between and among members of the Department resulting in a refusal or failure to report instances of misconduct of which they are aware despite their obligation to do so as sworn peace officers to protect themselves or their fellow officers from discipline, criminal prosecution, or civil liability.

**ANSWER:** Deny.

61.     This failure to discipline endangered the firm understanding among Department Officers, that they are above the law and can act with impunity without the fear of consequences.

**ANSWER:** Deny.

62.     The Village's policymakers are aware, condone, or facilitate the enforcement of this "code of silence," which is neither manifestly job-related nor consistent with business necessity.

**ANSWER:** Deny.

63.     In the rare instances when complaints of misconduct are sustained, discipline if haphazard and unpredictable and is meted out based on rank and internal connections, which does little to deter misconduct (e.g., Kurtisa Curtis is again at the Department despite lawsuits alleging sexual harassment being filed against her and on belief was never brought up on charges before the Village's Board of Police and Fire Commission.

**ANSWER:** Deny.

**COUNT I – 42 U.S.C § 1983 DEPRIVATION OF FIRST AMENDMENT RIGHTS OF SPEECH AND ASSOCIATION**
**Plaintiff v. All Individual Defendants**

64.     The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by references as if fully set forth herein.

**ANSWER:**  Defendants incorporate and restate their answers to the preceding paragraphs as their answer to paragraph 64.

65.     The First Amendment to the United States Constitution guarantees the Plaintiff's rights to speak on matters of public concern free from retaliation.

**ANSWER:**  Admit.

66.     As described more fully above and incorporated by reference herein, Plaintiff engaged in extensive protected speech on matters of public concern, including, but not limited to publicly opposing public corruption, filing numerous grievances challenging the Department's unlawful conduct, and opposing other Village misconduct and misdeeds.

**ANSWER:**  Deny.

67.     Griffin has no job purpose for his speech and associational activity, no delf-interest for his speech activity, and his speech activity occurred through acts outside of the line of duty, including as a private citizen in making complaint with the FBI and Cook County State's Attorney's Office, filing grievances through CP's FOP Lodge, and taking his grievances to arbitration or even court action.

**ANSWER:**  Deny.

68.     The foregoing activities had nothing to do with Griffin's official job duties as a police officer for the Village of Calumet Park.

**ANSWER:**  Deny.

69.     Griffin was retaliated against, harassed, transferred, constructively demoted, and constructively terminated for engaging in constitutionally protected speech and expressive

conduct, including by at least the following actions:

    a.  Not being compensated for working after his birthday on August 20, 2021;

    b.  Not being paid for him compensatory time that was erroneously used when he was injured in the line of duty.

    c.  Drafting an ordinance one month before Griffin's 63rd birthday to get rid of Griffin once and for all despite numerous unsuccessful attempts.

    d.  Signing a Vote of No Confidence against the then-police chief, Mann;

    e.  Being involuntarily retried in 2021;

    f.  Not being provided any follow-up paperwork on how to apply for his pension benefits, insurance coverage, etc.;

    g.  Discontinuing his insurance coverage on July 31, 2022, despite the Village paying it since he was separated;

    h.  Not providing any notice of Griffin's rights pursuant to COBRA once his insurance benefits were discontinued;

    i.  Unofficially denying his application for pension payments based on "insufficient" service credit.

**ANSWER:** Deny.

70.    Griffin carried out his job duties competently and professionally, but Defendants penalized him for exercising his First Amendment protected rights, which caused the Defendants to retaliate against Griffin in the manner described in the preceding paragraphs.

**ANSWER:** Deny.

71.    As a result of the aforementioned deprivations, Plaintiff has suffered damages, including loss of pay that he would have received as a police officer until the age of 65, pension

differential, emotional distress, reputational damage, and general compensatory damages.

**ANSWER:** Deny.

### COUNT II – U.S.C. § 1983 CLAIM OF RETALIATION FOR DEPRIVATION OF RIGHTS UNDER § 1981
### Plaintiff v. All Individual Defendants

72.     The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

**ANSWER:** Defendants incorporate and restate their answers to the preceding paragraphs as their answer to paragraph 72.

73.     42 U.S.C § 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, given evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." *See Campbell v. Forest Preserve Dist. Of Cook County, Ill.,* 752 F.3d 665, 667 (7th Circ. 2014) (holding that public sector entities may be liable for 42 U.S.C. § 1981 violations via 42 U.S.C. § 1983).

**ANSWER:** Defendants admit the existence and language of 42 U.S.C § 1981 as stated therein. Defendants deny all remaining allegations in paragraph 73.

74.     The United States Supreme Court has held that retaliation claims are cognizable under Section 42 U.S.C. § 1981, including claims by individuals who suffer retaliation for having tried to help another. *See CBOCS West, Inc. v. Humphries*, 128 S.Ct. 1951, 1958 (2008).

**ANSWER:** Deny.

75.     Griffin engaged in conduct protected by 42 U.S.C § 1981 position opposing public

corruption and official misconduct as alleged above.

**ANSWER:** Deny.

76.     At all times, Defendants knew that Griffin opposed the aforementioned misconduct and were all aware of the grievances that were filed on his behalf, the arbitration proceedings, court proceedings, and reports to the FBI and State's Attorney's Office.

**ANSWER:** Admit that defendant Village was aware that, at various times, plaintiff had filed or was involved in grievances and arbitration and court proceedings related to his employment. Defendants deny all remaining allegations in paragraph 76.

77.     At all times, Plaintiff was performing his position in a satisfactory manner.

**ANSWER:** Deny.

78.     No similarly situated employee who did not oppose the Village's illegal activities were targeted like Griffin.

**ANSWER:** Admit that defendants did not target employees. Defendants deny all remaining allegations in paragraph 78.

79.     As a proximate result of Griffin's oppositional and protected conduct, Defendants personally and directly retaliated against Griffin in the foregoing manner and in violation of 42 U.S.C. § 1981.

**ANSWER:** Deny.

80.     Plaintiff has endured substantial financial loss, suffering, humiliation, emotion distress, and other damages in the past and the future.

**ANSWER:** Deny.

**COUNT III – MONELL CLAIM FOR DEPRIVATION OF PLAINTIFF'S FIRST
AMENDMENT RIGHTS
Plaintiff v. Defendant Calumet Park, Illinois**

81. The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

**ANSWER:** Defendants incorporate and restate their answers to the preceding paragraphs as their answer to paragraph 81.

82. Defendant Fletcher, as the police chief of the Village of Calumet Park, Illinois is a final policymaker.

**ANSWER:** Deny.

83. The Defendant Fletcher, by express actions, took action against Griffin for his protected First Amendment conduct in opposition to the administration throughout the last several years.

**ANSWER:** Deny.

84. When Griffin refused to back down, he was retaliated against as described herein.

**ANSWER:** Deny.

85. That the retaliation against Plaintiff was part of systemic express acts espoused by the Village, through its final policymakers, to punish officer Griffin for exercising his First Amendment rights and taking positions "adverse to the Village" as described throughout this Complaint.

**ANSWER:** Deny.

86. That as a result of employing the foregoing express acts espoused by Calumet Park through Denson, a final policymaker, to retaliate against Plaintiff, Plaintiff suffered harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss enjoyment of life, and severe emotional distress.

**ANSWER:** Deny.

18

87.     WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, general compensatory, special, consequential damages, for emotion distress, and reputational harm, for attorneys' fees under 42 U.S.C. § 1988, as well as order Calumet Park, Illinois to reinstate Plaintiff to position and benefits with full make-whole relief, and for all such other relief to which he is entitled and the Court deems just and proper.

**ANSWER:** Defendants deny that plaintiff is entitled to any judgment or other relief.

**COUNT IV – 42 U.S.C. § 1983 CONSPIRACY TO DEPRIVE OF FIRST AMENDMENT RIGHTS**
**Plaintiff v. All Individual Defendants**

88.     The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

**ANSWER:** Defendants incorporate and restate their answers to the preceding paragraphs as their answer to paragraph 88.

89.     In information and belief, Defendants Denson and Fletcher, reached a mutual understanding to commit acts in retaliation against Griffin for his perceived opposition as described herein.

**ANSWER:** Deny.

90.     In furtherance of that agreement, Defendants and other unknown parties conspired to retaliate against Griffin, attempt to avoid paying him his lifetime pension benefits by not miscalculating his service credits and then arbitrarily denying him his pension, and contrive a way to remove Griffin without giving him the opportunity to take the matter to arbitration or Court (e.g., the mandatory retirement ordinance enacted one month before he turned 63 years old).

**ANSWER:** Deny.

91.    In furtherance of that agreement, Defendants conspired to retaliate and embarrass Plaintiff Griffin and ultimately secure his separation from the Department.

**ANSWER:** Deny.

92.    The object of the conspiracy was to retaliate against Griffin for the oppositional and protected conduct by committing numerous adverse actions against Griffin.

**ANSWER:** Deny.

93.    Griffin was deprived of his First Amendment constitutional rights in the manner described in the preceding paragraphs, including the right to speak and associate freely on matters of public concern, such as opposition to public corruption or disruption of perceived efforts to eliminate public corruption within the Department and the Village of Calumet Park.

**ANSWER:** Deny.

94.    That in furtherance of the conspiracy, Defendants committed overt acts in retaliation against Plaintiff for his protected and oppositional conduct as described above.

**ANSWER:** Deny.

95.    That the misconduct described in this Court was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:** Deny.

96.    As a result of the aforementioned deprivation of federal rights, Plaintiff has suffered injuries including, but not limited to, deprivation of pension benefits, health insurance, lost pay and benefits, reputation damage, and emotion distress.

**ANSWER:** Deny.

**COUNT VI – INDEMNIFICATION AGAINST VILLAGE OF CALUMET PARK, ILLINOIS**
**Plaintiff v. Defendant Village of Calumet Park, Illinois**

97.     The Plaintiff realleges all other paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

**ANSWER:** Defendants incorporate and restate their answers to the preceding paragraphs as their answer to paragraph 97.

98.     As a municipality, the Village of Calumet Park, Illinois has indemnification obligations for wrongful acts committed by if officials, employees, and agents, including, here, the individual Defendants. See 745 ILCS §§ 10/1-202 and 9-102.

**ANSWER:** Admit the existence of the statutes cited and that the Village possesses certain indemnification obligations to officials or employees under the circumstances stated therein. Defendants deny all remaining allegations in paragraph 98.

99.     The Village is responsible for the challenged actions of the individual Defendants and the Village because of such indemnification obligations.

**ANSWER:** Deny.

## JURY TRIAL DEMAND

100.    Plaintiff hereby requests a trial by jury on all issues triable by jury

**ANSWER:** Admit that plaintiff has requested a jury trial herein.

Wherefore, defendants Village of Calumet Park, Ronald Denson, and Christopher Fletcher, deny that plaintiff is entitled to any judgment, relief, and/or remedy as claimed hereunder, and defendants pray that this Honorable Court deny all requested remedies requested by plaintiff and enter judgment in defendants favor and grant such other relief as this Court deems just.

## DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses:

### First Affirmative Defense

1.  Plaintiff failed to file his asserted claims, whether for violations of his rights under the First Amendment of the United States Constitution and/or 42 U.S.C. §§ 1981 and 1983, or for retaliation for asserting rights thereunder, within the mandatory administrative and/or statutory limitations periods.

2.  Most or all of the acts of retaliation alleged by plaintiff are time-barred including, but not limited to: his termination and reinstatement (along with any backpay and benefits disputes related to the same) in 2011 through 2013; disputes related to his leave and entitlement to benefits during and following his claimed on-duty injury in 2015; his challenge to the passage of an ordinance by the Village in July 2021; alleged Village denials of requests under the Illinois Freedom of Information Act; and alleged denials of pension and healthcare rights following his retirement in August 2021.

3.  Defendants are entitled to judgment on all counts based on these and related claims and/or adverse employment actions because the actions are time-barred or barred by the doctrine of laches as defendant is prejudiced by having to litigate these matters now.

### Second Affirmative Defense

1.  Plaintiff failed to exhaust the required administrative procedures or remedies for his claims.

2.  Plaintiff identifies a number of purported adverse actions violating his rights and/or constituting retaliation against him, including, but not limited to: disputes related to his leave and entitlement to benefits during and following his claimed on-duty injury in 2015; his challenge to the passage of an ordinance by the Village in July 2021; alleged Village

denials of requests under the Illinois Freedom of Information Act; and alleged denials of pension and healthcare rights following his retirement in August 2021.

3. Plaintiff cannot recover damages for these alleged actions because he possessed adequate contractual or state administrative and legal remedies to challenge or appeal any adverse decisions by the Village and/or appropriate agency or board, and plaintiff failed to pursue such remedies.

4. Such adverse decisions cannot serve as a basis for damages here, and plaintiff's claims based on the same are waived.

5. Plaintiff having failed to exhaust administrative remedies and procedures, defendants are entitled to judgment on plaintiff's counts and claims/

### Third Affirmative Defense

1. The activities and/or complaints identified by plaintiff in his complaint did not involve mattes of public concern.

2. Any of plaintiff's employment-related actions, including his filing legal claims, grievances, and/or administrative charges against the Village and its officials were for his and/or his collective bargaining unit's own benefit, and they challenged or appealed adverse decisions.

3. Plaintiff's alleged complaints of corruption, refusal to participate in internal Village interviews, and/or signature on "votes of no confidence" were related to his employment and job duties as a police officer.

4. Accordingly, plaintiff's actions and complaints as identified in the complaint are not protected by the First Amendment or other constitutional provisions or statute.

5. Defendants are entitled to judgment on all of plaintiff's First Amendment-related claims.

**Fourth Affirmative Defense**

1. Plaintiff has filed a number of prior complaints and administrative charges against the Village and its officials, including grievances related to his 2011 termination and claim for backpay and reinstatement of benefits.

2. Plaintiff has also filed a claim or claims, alleging age discrimination and retaliation, with the United States Equal Employment Opportunity Commission challenging purported adverse employment actions against him.

3. These grievances, lawsuits, and charges have been litigated and settled or otherwise adjudicated on their merits, precluding plaintiff seeking or recovering damages on these same or related claims here.

4. Plaintiff is barred from bringing the same or related claims here under the doctrine of *res judicata* and/or *collateral estoppel*.

**Fifth Affirmative Defense**

1. Following purported injuries and adverse decisions alleged by plaintiff in the complaint, plaintiff failed to mitigate any potential or real damages.

2. Accordingly, in the event plaintiff is entitled to any award of damages against the defendants, they are entitled to a set-off or reduction of the award for the failure to mitigate damages.

**Sixth Affirmative Defense**

1. Alternatively, assuming the actions and complaints purportedly made by plaintiff were matters of public concern entitled to protection under the First Amendment, defendants could not have reasonably known that the Village's or their actions or decisions

violated plaintiff's constitutional rights, particularly those in which they collectively or individually were not personally involved.

2. Defendants are entitled to qualified immunity as to all of plaintiff's counts and to the dismissal of the same.

Wherefore, defendants pray for entry of judgment in their favor and against plaintiff on all counts and on all of their affirmative defenses and for all other relief that this Court deems just.

Respectfully submitted,

By:     *s/ Michael J. Hayes*
One of their Attorneys

Michael J. McGrath
Michael J. Hayes Jr.
ODELSON, STERK, MURPHEY,
FRAZIER & MCGRATH, LTD.
3318 West 95th Street
Evergreen Park, IL  60805
Ph: (708) 424-5678
mmcgrath@osmfm.com
smcgrath@osmfm.com